Bellinger *v.* Kitts.

———— •••• ————

Same Term. *Before the same Justices:*

T. and E. Bellinger *vs.* Kitts.

In expounding a written instrument, the antecedent and surrounding circumstances are competent evidence, for the purpose of placing the court in the same situation, and giving it the same advantages for construing the instrument, as is possessed by the parties who executed it.

K. and B. entered into a written contract, by which K. leased a farm and personal property to B. for one year, at a specified rent. And it was covenanted and agreed by K. that in case B. should " *at any reasonable time"* pay to K. the interest on the money paid by K. towards the property, and secure the said purchase money, he would deed and convey such property to B. Under this agreement B. continued in the possession ond occupation of the property, paying the stipulated rent, for several years; the agreement being continued from year to year by implication. On a bill by B. against K. to compel a specific performance of the contract to convey the property to him; *Held* that the "reasonable time" within which B. had the right to pay for or to secure the payment of the purchase price, and to have a conveyance, did not expire with the current year after the date of the contract; but that the rights of the parties were to be adjudged as though a new agreement, with the clause concerning the sale of the property, had been made each year, or at the expiration of the period covered by the preceding one; especially as K. had stood by and seen the farm rendered more valuable by permanent improvements, without setting up any

Bellinger *v.* Kitts.

claim that the condition conferring on B. the right to purchase had become forfeited.

*Held also*, that the execution of the new agreement between the parties, omitting the clause giving to B. the right to purchase the property, did not cut off the right of B. to avail himself of that provision in the former agreement, where it appeared that, so far as that provision was concerned, the old contract was, by the express agreement of the parties, still to remain in force.

The cases in which a legal tender is indispensable, notwithstanding a refusal to receive the money, and a general refusal to perform the contract, on other grounds, are very few. *Per* GRIDLEY, J.

The general rule is that a strictly legal tender may be waived by an absolute refusal to receive the money ; on the principle that no man is bound to perform a nugatory act.

Where there is a mutual obligation on a purchaser to pay or secure the purchase price, and on the vendor, to convey the property purchased, an offer and readiness to perform, on the part of the purchaser, is enough ; especially where the vendor refuses to convey at all.

IN EQUITY. The bill in this cause was filed to enforce the specific performance of an agreement for the sale and conveyance to the plaintiffs of real and personal property. The cause was heard upon pleadings and proofs. Most of the material facts are set forth in the opinion of the court. The bill alledged that the personal property bid off by the defendant at the sheriff's sale and leased by him to the plaintiff, was appraised by two men at $800, and that the land was worth $4250. The defendant, in his answer, denied that the land was worth that sum, and insisted that it was not worth more, now, than $3500, and that in consequence of the rise of land in that locality it was worth several hundred dollars more now than it was at the time of the mortgage sale. The plaintiffs alledged that they had offered to sell the personal property to the defendant at $800 ; and that they had offered to execute to him a bond and mortgage on the premises for $1996, the balance due to him ; or if the defendant would prefer it, that they would keep the personal property at $800, and would execute to him a bond and mortgage, free from incumbrances, on the premises, for the sum of $2796, and interest from March 13, 1848, and to pay him a reasonable sum, in addition, for his trouble in the premises ; all of which offers the defendant refused to accept. And

Bellinger *v.* Kitts.

that the defendant absolutely refused to suffer the plaintiffs to redeem the land or personal property, or any part of it. The bill also alledged that on the 24th of March, 1848, Dayan and Knox, the plaintiffs' agents, or one of them, made several propositions in writing to the defendant for an adjustment of the matters between the parties, all of which were rejected; that they then asked the defendant if he would accept the specie for the amount due to him, in case such agents would go into the bank and get the same and tender it to him; that the defendant answered that he would not take the money if it was tendered, as he did not consider himself obliged to do so. The bill also alledged that the plaintiffs had often requested the defendant to reconvey to them the said personal property and premises so bid off by the defendant, on their paying or securing to be paid the amount due, with interest, and a reasonable compensation for trouble, &c. which the defendant had refused to do.

*C. P. Kirkland,* for the plaintiffs. I. The verbal arrangements and agreements in relation to the purchase of the personal property in April, 1841, by the defendant, constituted him practically a *mortgagee* of that property; and the plaintiffs had the right of redemption. (8 *John.* 96. 9 *Wend.* 227, 232. 2 *Cowen,* 324, 331, 246. 15 *John.* 205, 555.) II. The circumstances and arrangements under which the defendant bid in the real estate at the mortgage sale in October, 1841, created the relation of mortgagee and mortgagors between the defendant and the plaintiffs in every practical and equitable sense. (*Same cases.*) III. Emphatically, the written instrument of May, 1843, created that relation both as to the real and personal property; or, what is precisely equivalent for all practical purposes, that instrument created the relation of vendor and vendee. IV. The taking the instrument (or lease) in March, 1847, did not destroy or affect the relation then existing between the parties; but on the contrary, that relation and the instrument of May, 1843, were left in full force and effect. V. The defendant, by receiving frequent payments pursuant to and upon the

instrument of May, 1843, has affirmed it, and has waived any forfeiture that might have arisen from non-payment at the day. Indeed, he does not set up in his answer any ground of forfeiture or non-performance on the plaintiffs' part. (11 *Paige*, 352.) VI. On the strength and faith of their right to redeem (or to pay the purchase money) the plaintiffs have made improvements and expenditures on the property : and would be grossly defrauded, if the defendant were permitted to repudiate his agreement. VII. The plaintiffs have in good faith performed on their part: and they have made all the requisite tenders and offers on their part to entitle them to call on the defendant for a conveyance of the property, real and personal. VIII. By the conduct and engagements of the defendant other persons were induced not to bid at the sales : a palpable fraud would be committed both on the plaintiffs and on those persons, if the defendant were now permitted to refuse to convey to the plaintiffs. IX. The defendant, if the defence he sets up is successful, would make a clear gain to himself and a clear loss to the plaintiffs, of at least $2500, and would thus be enabled to perpetrate a flagrant wrong and oppression. X. The plaintiffs have established their right to a conveyance of the real and personal property ; and the defendant having inequitably resisted a just demand, should be decreed to pay costs.

*V. R. Martin*, for the defendant. All negotiations or agreements between the parties in relation to the premises and personal property in question were merged in the agreement of May 3, 1843 ; and from that date the rights of the parties were what the written instrument defined them to be. By the fair construction of that instrument the plaintiff could only require the conveyance of the property within one, or at the extent, two years from its date. The " reasonable time" mentioned was intended to be limited to the period of the lease. The fact that the plaintiffs were suffered to remain in possession after the lease expired, gave them no further rights. The evidence of the witness Knox, showing a parol agreement that the clause in the old writing, providing for a conveyance, should remain in

force, made at the time of the execution of the lease of March 13, 1847, was inadmissible, and should be excluded. The fact is also fully disproved by the circumstance that a similar clause in the last lease was stricken out before the defendant would sign it, and by the positive testimony of Nelson Kitts. At all events, the fact that the defendant refused to execute the last lease with a clause giving the plaintiffs a right to a conveyance, was notice to them that he should not regard himself as any longer obligated to convey to them. If the plaintiffs had not lost the right to tender the money or security and require a conveyance previous to the execution of the second lease, it was too late to do so on the 24th of March, 1848. The authority of Dayan and Knox to make a tender or offer to the defendant was not sufficient. Nor was the defendant notified in any manner, that they had any authority to make the offer and receive a conveyance. The offer of March 24, 1848, was therefore insufficient. The offer was not a fair and *bona fide* offer on the part of the plaintiffs, and was therefore insufficient. The amount offered was not as much as the defendant's debt against the plaintiffs, in consequence of an error in the receipt of January 13, 1845. There is no equity in the case entitling the plaintiffs to relief. The property was originally purchased by the defendant at a price but little if any less than its cash value, and if to the principal be added an adequate rent of the property, it will bring the amount of the defendant's claim to the full value.

*By the Court,* GRIDLEY, J. This cause comes before the court upon pleadings and proofs, on a bill filed to compel the specific performance of a contract to convey to the plaintiffs a certain farm situated in Lewis county, together with a large quantity of personal property. The bill charges that in the year 1840 the defendant bid off the farm at $2000, on a mortgage sale; and also a large quantity of stock, farming utensils, and other property then on the farm, at a sale upon an execution against the plaintiffs. And that this purchase was made in pursuance of a verbal agreement to allow the plaintiffs to continue

Bellinger *v.* Kitts.

in the possession of the said farm and personal property, by paying the interest on the auction price of the same; and ultimately to redeem the property by paying up the principal sum paid by the defendant on his purchase, and the interest on the same.

We think this agreement abundantly proved; but we shall spend no time upon this part of the case, because the rights of the parties depend on certain written agreements subsequently made, which are set out in the pleadings, and concerning which much testimony has been taken. The most that can be made of the large mass of testimony concerning the relative situations of the parties, the condition and value of the property purchased by the defendant, and the mutual acts and declarations of the parties concerning the same, is to aid the court in the construction of the agreements on which the plaintiffs' claim to relief in this action must of necessity depend. That these antecedent and " surrounding circumstances" are competent evidence to place the court which is to expound a written instrument, in the same situation, and to give such court the same advantages for construing the instrument, as is possessed by the parties who executed it, is the settled law of the land. (2 *Cowen & Hill's Notes, p.* 1399, *citing Wigram on Extr. Ev.* 59, 138.)

On the 3d of May, 1843, the parties entered into a written contract under their hands and seals, by which the defendant, in consideration of $2600 and of the covenants contained in the said instrument, leased the farm and personal property to the plaintiffs, for one year, at a rent equivalent to the interest on the sums at which the defendant bid off the same. This agreement also contained the following clause: " It is further covenanted and agreed by and on the part of the said Kitts, that in case said Bellingers shall, *at any reasonable time,* pay to said Kitts, or secure to him all the interest on the money paid by him towards said place and personal property, and secure the said purchase money, *he shall deed and convey to them the said land and personal property.* The said personal property shall be made to be as valuable and appraised and made equal to what it was worth when purchased—and if not, it is to be made

good by said Bellingers, at the expiration of this lease." The plaintiffs continued in the possession and occupation of this property, both real and personal, paying the stipulated interest and making permanent improvements upon the farm, until the 13th of March, 1847; when the exact sum which was due for principal and interest was ascertained, and a new agreement was executed between the parties, in which the consideration was stated to be the sum of $2796 instead of the sum of $2600 which had been assumed in the first contract, without a calculation; and omitting the covenant to sell. Otherwise this agreement was like the first.

Upon this state of facts the counsel of the defendant contends, 1st, that the *reasonable time* within which the plaintiff had the right to pay for or to secure the payment of the purchase price of the property, and have a conveyance, expired with the current year after the date of the contract. Granting that this would be so, if the occupation had ceased with the year, I can not admit that this consequence will follow when this original agreement was by implication continued from year to year until the execution of the new agreement in 1849. The rights of the parties are to be adjudged as though a new agreement, with the clause concerning the sale of the property, had been made each year, or at the expiration of the period covered by the preceding one. This should certainly be so held, in a case where the defendant has stood by and seen the farm rendered more valuable by permanent improvements, without interposing any notice of a claim that the condition conferring on the plaintiff the right to purchase had become forfeited. 2dly. The counsel also contends that the execution of a new agreement, omitting the provision giving the plaintiffs a right to purchase, cut off all right on the part of the plaintiffs to avail themselves of the condition in the former agreement. On the other side it is insisted that, so far as this condition is concerned, the old contract remains in force, by the express agreement of the parties; and that Mr. Knox, the depositary of the agreement, was specially directed by the parties to hold the old agreement, leaving it, so far as the covenant in question is concerned, a subsisting and

valid contract between the parties. This leads us to examine the testimony upon this point. The witness Knox, who had been the mutual agent of both parties; who had drafted both agreements; and who had been present and heard all the negotiations between them, has given a very minute and particular account of the entire transaction. He at first prepared the second agreement with the clause in question inserted in it; whereupon it was objected to by Kitts, on the ground that he did not wish the agreement to contain the words "*executors, administrators and assigns*," for the reason that he did not intend to give the plaintiff a right to sell the place to any one else—still assuring them that he did not intend to object to their paying or securing him what he had paid, and receiving a conveyance of the property; using the significant expression "Farmer Jake [meaning himself] will not hurt a hair of your heads, boys." He did not object to the covenant as he understood it to be expressed in the first agreement; and both parties directed Knox to hold the old agreement, as evidence of that portion of it which was not abrogated. It is true that Nelson Kitts, the defendant's son, understood the conversation differently, in some respects. But this young man, when he comes to state the objection which his father made to executing the last instrument as it was at first written, states it substantially as Mr. Knox does. He may not have heard the entire negotiation. Mr. Knox did, and the young man may not have understood the conversation in all its parts as Mr. Knox must have done. *He* may be mistaken; Knox cannot. Knox swears *affirmatively* and *positively ;* and if he swears untruly he does so intentionally, and is guilty of perjury. And there is no possible motive that, on these papers, can be assigned for the commission of such a crime; while a strong motive exists to induce young Kitts to defeat the plaintiffs' claim, viz. an arrangement by which he is to have the farm himself. This he is compelled to admit on his cross-examination. For these reasons we give credit to Mr. Knox; and therefore hold the old agreement to sell and convey still binding on the defendant, notwithstanding the new lease does not contain the clause giving that right.

Bellinger *v.* Kitts.

This brings me to a consideration of the only remaining question, which arises upon the tender of the amount due to the defendant and the demand of a conveyance from him.

It is supposed by the counsel of the defendant that a *strict legal tender* was necessary to authorize a decree on this bill; and that a refusal by the defendant to perform his agreement, upon other grounds, would not excuse the production of the money, and the full amount of it, notwithstanding both parties were mistaken as to the true amount, by means of an error in computation, committed by a common agent. To this doctrine I cannot assent. Even if this question were to be tested in a court of law, and by strict legal rules, no such obligation would rest on the plaintiffs. The cases in which a legal tender is indispensable notwithstanding a refusal to receive the money, and a general refusal to perform the contract, on other grounds, are very few. The general rule is that a strictly legal tender may be waived by an absolute refusal to receive the money; on the principle that no man is bound to perform a nugatory act. Here was a mutual obligation, on the plaintiffs to pay or secure the purchase price, and on the defendants to convey the land and personal property. An offer and readiness to perform, on the part of the plaintiffs, was enough; especially when the defendants refused to convey at all. Even performance of a condition precedent need not be averred, where performance was waived, or prevented by the party to be benefited by it. (1 *Chit. Plead.* 318.) But, in a court of equity the strictness required in a court of law is not exacted. That court proceeds upon equitable grounds, irrespective of technical forms. A court whose province it is to relieve against strict legal forfeitures will not cut a party off from his equitable rights on account of an omission to produce the money, when the offer to do so was waived. Nor, when the offer was, by the mistake of the agent of both parties, a few dollars less than the sum due; especially when the refusal was put on no such ground, and when it was a substantial refusal to convey at all. The plaintiffs have been compelled to come into a court of equity to enforce their plain equitable rights. They must therefore have

their costs. The refusal of the defendant to convey was unjust and inequitable.

It must be referred to a master to ascertain the amount due, with interest, for the real and personal property in question, under the agreement of the parties. And on the payment of the same the defendant must execute conveyances pursuant to the contracts, with covenants against his own acts. And the decree will also provide that unless the money is paid within fifteen days after the confirmation of the referee's report, the bill is to be dismissed, with costs.

SAME TERM.    *Before the same Justices.*