Ranney, J.
The action in the court below was brought by Fugle against Hildebrand upon á written contract entered inte between the parties on February 23,1850, for carrying the United States mail from Zanesville to McConnellsville, from March 3,1850, *132 until June 30, 1852.' For this service Hildebrand agreed to pay Fogle the sum of $750 per annum, “payable quarterly, in the months of May, August, November and February,” with the further sum of $300, in case certain additional services were required by the post-office department of Hildebrand. By an agreement of the same date, signed by Fogle and delivered to Hildebrand, the former agreed to carry the mail, as stipulated in the other contract, in accordance with the schedule ordered by the post-office department, and to perform the additional service for said sum of $300, provided the same was required of Hildebrand. He agreed to account for all such money as should bo paid him through postmasters, and deduct it from the sums falling due to him from time to time. If any fines were imposed on Hildebrand by the post-office department, for failures or injured mails on that part of the route, the same was to be deducted from the pay of Fogle. It was agreed that the' contract should commence on March 3,1850, and that the first payment should be for the month of March. On the 19th of April following, Fogle, in a letter to Hildebrand, stated the sum due him at $59.75, *which he had received from postmasters, together with a, further sum which ho forwarded to Hildebrand. This, it will be seen, was the exact sum duo for the month of March, as mentioned in the contract. On August 30,1850, he receipted to Hildebrand for $114.70, which is stated to be “ in full and on settlement as a balance due me for transporting the United States mail between Zanesville and Mc-Connellsville, for the quarter ending June 30, 1850.
He continue! to carry the mail until August 30, 1850, and on September 5th commenced this suit, to recover for the service commencing on July 1st and ending on August 30th. The position of Hildebrand was that the quarter did not end until September 30th, and that the money did not become due for that quarter’s service until the month of November. He denied, therefore, that Fogle had complied with the contract, on his part, or in any event that any money was due him at the commencement of the suit.
To fortify himself in this construction of the contract, he gave in evidence a sworn copy of his own contract with the post-office department, by which it appeared that on January 29,1850, he had contracted to carry the mail from Marietta to Zanesville, the contract with Fogle covering a part of the same route, for the same period of time as specified in the contract with Fogle, for the sum *133 •of §1,900 per annum, payable quarterly, in the months of May, August, November, and February. To this contract was appended the schedule of arrivals and departures referred to in the contract with Fogle. He also proved by a deposition of a clerk in the department, that the regular post-office quarters of the year end on the last days of March, June, September, and December, without any reference to the time at which contracts commence; that under the contract with the plaintiff in error and all others of like character, the payments never fall due until the months named after the expiration of the quarter, and are seldom made before; and that where a fraction of a ^quarter only, intervenes between the commencement of a contract and the close of the quarter, the payment is only made for such fraction, and was so done in the present instance. The court then charged the jury that this testimony could not be received in evidence for the purpose of explaining the contract between the parties, the contract of the defendant with the post-office department not being referred to in the contract with Fogle; that it must be disregarded so far as related to that purpose, and so far ruled it out and directed it to be withdrawn from the consideration of the jury. To this opinion the plaintiff in error excepted, and the jury having returned a verdict for the full amount claimed, he moved for a new trial, which being overruled, he also excepted to that, and now seeks a reversal of the judgment for what he claims were errors in the said rulings of the court.
Did the court err in thus rejecting the evidence offered, and in ■overruling the motion for a new trial, are the questions presented for our consideration. The reason given by the court for rejecting the evidence is hardly correct in point of fact. It is true that the contract of Hildebrand with the department is not mentioned in so many words, in his contract with Foglq, but it is also true that there are such allusions in the latter contract as leave no ■doubt whatever that Fogle did understand that such a contract existed. It acknowledges the obligation of Hildebrand to carry the mail in accordance with a schedule from the department as to arrivals and departures, and his liability to be fined for failures, etc., and his obligation to do additional service, if required; and all these obligations Fogle took upon himself. Whence arose all these obligations'/ They could arise by law only in consequence ■of a contract with the department; and it seems to be shutting *134 our eyes to the most obvious light when we refuse to look at the matter as the parties themselves saw it. The subject matter of this contract was the transportation of the United States mail. It does not attempt to give a full description of everything to which it alludes. It employs terms with reference to the established usages. and regulations of the post - office ^department. Among these is the term “ quarters and the question is, what does that term mean as applicable to this branch of the public service? and can a court and jury be permitted, by evidence, to try and find out? We think they can, without, in the least, infringing upon the wise and well-settled rule, that a written instrument can not be varied or contradicted by parol evidence. These parties may be fairly presumed to have understood the matter about which they were contracting. But the same thing can not be said of every court and jury that may be called on to interpret their contoact. To enable the court and jury to be as wise as the parties, and so to arrive at and give application to the words they have used, and thus carry out their intentions, the law permits them to hear a full description, from evidence, of the subject matter of the contract, and of the circumstances that surrounded the parties at the time it was made; and to learn what were the motives and inducements that led to the contract, and the object to be attained by it; or, as expressed by the court in the case of Bellinger v. Kitts, 6 Barb. 273: “In expounding a written instrument, the attendant and surrounding circumstances are competent evidence for the purpose of placing the court in the same situation, and giving it the same advantages for construing the instrument as are possessed by the parties who execute it.” The same rule is laid down by Mr. Greenleaf, in his work on Evidence (vol. 1, sec. 286), and enforced by a great variety of illustrations. The object or tendency of this evidence is not to contradict or vary tho terms of the instrument, but to enable the court to come to the language employed, with an enlightened understanding of the subject matter in reference to which it has been used.
This whole doctrine is very ably considered in the case of Bradley v. Washington, Alexandria and Georgetown Steam Packet Company, 13 Pet. 89, and the rule carried much further than we are called upon to go in the ease at bar. The plaintiff in error had,' by an agreement in writing, hired a steamboat to be put on the
route from Washington to Potomac *Creek, until another *135 steamboat, then building, should be prepared, and be put on the route.
The plaintiff in error was the contractor for carrying the United States mail, which was carried between those points by steamboat, except in winter, when the navigation of the river was interruptéd by ice, when the mail was carried by land. The steamboat so hired was employed in carrying the mail, but the ice interrupted its use for a considerable time, and the owners sued for the hire of the boat during the time it was so interrupted.
The circuit court refused to allow parol evidence to be given to show the purpose for which the steamboat was employed, and to explain the meaning of the terms used in the contract, and of other matters conducing to show the meaning of the contract. The Supreme Court held that the evidence was admissible— that extrinsic parol evidence is admissible to give effect to a written instrument, by applying it to its proper subject matter, by proving the circumstances under which it was made, whenever, without the aid of such evidence, the application could not be made in the particular case.
Mr. Justice Barbour, in delivering the opinion of the court, after a critical review of the authorities, says : “ All the cases which we have cited, in which extrinsic evidence has been received, and those which we have sujoposed, in which we think that it would be admissible, proceed on one principle only, and can only be justified upon that principle. And that is this: that the rule which admits extrinsic evidence, for the purpose of applying a written contract to its proper subject matter, extends beyond the mere designations of the thing on, which the contract operates, and embraces within its scope the circumstances under which the contract concerning that thing was made, when, without the aid of such extrinsic evidence, such application of the written contract to its proper subject matter could not be made.”
And the court held, that the extrinsic circumstances, that Bradley was a contractor with the government for carrying the *mail, and that the steamboat was to be engaged in that business, might be shown, although they were not alluded to in the written contract, and when shown would deprive the owners of the boat of the right to recover for such time as the boat could not be used on account of ice. In the case under consideration, no attempt is made to add anything to the written contract. The *136 proof is only offered to give application to the terms used in it, by showing, from the circumstances and situation of the parties, in what sense they used them; and we think for this purpose the evidence was clearly admissible, and taken in connection with the written contract, or rather the written contract thus applied by it, has reference to the established quarters of the post-office department, in fixing the time of payment, and not to the quarterly divisions of the year from the date of the contract. Indeed, no other construction can, it seems to us, reasonably be put upon the contract, without the aid of this extrinsic evidence, when made in connection with the written evidence that the plaintiff below has furnished, as to his understanding of ita true construction. The first payment, after the contract was entered into, was to be made in May, and it expressly provides that this shall be for the month of March. Why this provision? Because the month of March closed the regular post-office quarter. He was paid accordingly. On the 30th of August he gives a receipt in full for the quarter ending the 30th of Juno. This was the second payment to be made by the terms of the contract, and was made at the very time stipulated in the contract.
Ho here confesses, under his own hand, that the term “ quarterly,” used in the contract, refers to popt-office quarters. The post-office quarter did end at that time; but a quarter from the date of entering upon his contract, would have ended on the 3d of June.
Again, if the time is to be computed from the commencement of the contract, the termination of the quarters will not fall in either of the months named in the contract, and would involve the injustice of compelling Hildebrand to pay Fogle for his ^services before they were performed, while, for the same service, ho was obliged to wait upon the government until two months after they were performed.
Thus have the parties themselves given a practical construction to the terms of this contract, not contradictory to the language used in it, but in strict accordance therewith, and have applied its terms of payment to post office quarters. To show what these quarters were, as well as to show the circumstances and situation of the contracting parties, in respect to the subject matter of the contract, we think the evidence offered was admissible, and should have been permitted to go to the jury; and for rejecting *137 it, as well as in overruling the motion for a now trial, a majority of this court are of opinion that the court of common pleas erred. Upon the question raised as to the right of the plaintiff below to recover upon the evidence given by him, attempting to establish a mutual rescission of the contract, we express no opinion.
The plaintiff in error having been deprived of the'benefit of legal evidence, which he offered, compels us to reverse the judgment, in order that he may avail himself of it upon a new trial.
Caldwell, J., dissented.